[Cite as *State v. Miner*, 2020-Ohio-5600.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. Patricia A. Delaney, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 2019 CA 00173 |
| AARON MINER | |
| Defendant-Appellant | O P I N IO N |


CHARACTER OF PROCEEDINGS:     Appeal from the Canton Municipal Court,
Case No. 2019 CRB 4386


JUDGMENT:                               Reversed and Remanded

DATE OF JUDGMENT ENTRY:       December 3, 2020


APPEARANCES:


For Plaintiff-Appellee                    For Defendant-Appellant

KRISTEN BATES-AYLWARD           D. COLEMAN BOND
Canton City Law Director               600 Courtyard Centre
                                               116 Cleveland Avenue, N.W.
JASON P. REESE                          Canton, Ohio  44702
Canton City Prosecutor

KRISTINA M. LOCKWOOD
Assistant Canton City Prosecutor
218 Cleveland Avenue, S.W.
Canton, Ohio  44702

*Hoffman, P.J.*

**{¶1}**  Defendant-appellant Aaron Miner appeals his conviction and sentence entered by the Canton Municipal Court on one count of prohibitions concerning companion animals, following a jury trial.  Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE CASE AND FACTS

**{¶2}**  On August 30, 2019, the Stark County Sheriff's Department filed a complaint in the Canton Municipal Court, charging Appellant with prohibitions concerning companion animals, in violation of R.C. 959.131(B)(1), a misdemeanor of the second degree.  The trial court issued a warrant for Appellant's arrest on the same day.  Appellant was arrested on the warrant on September 13, 2019.  Appellant appeared for arraignment on September 19, 2019, and entered a plea of not guilty to the charge.  Appellant executed a waiver of his speedy trial right and a jury demand.

**{¶3}**  The matter proceeded to trial on October 22, 2019.

**{¶4}**  Stark County Sheriff's Deputy Anthony Angelo testified he was working on August 28, 2019, when he was dispatched to 2510 34th Street N.E., Canton, Stark County, Ohio, after an anonymous caller reported a male was punching a dog.  Deputy Angelo arrived at the residence and made contact with a boy and a woman, who subsequently identified herself as Virginia Miner.  Deputy Angelo explained to Miner he was there in response to a call about a male punching a dog.  Miner responded it was Appellant who punched the dog.  Miner provided the deputy with Appellant's first and last name and his approximate age.  She indicated Appellant was her cousin. When Deputy Angelo asked Miner what happened, Miner stated Aaron was over and just started punching the dog. Miner was hesitant about being identified.

{¶5} The body camera video of Deputy Angelo's interaction with Miner was played for the jury. The video depicts Deputy Angelo approaching Miner and the boy. The deputy advises Miner he is there in response to a call about a male punching a dog. Miner immediately reveals, "It was Aaron," and proceeds to identify Appellant. Deputy Angelo asked Miner if she believed Appellant was trying to hurt the dog, to which she replied, "Yes." Miner described the dog as a brown pit bull, approximately a year old.

{¶6} After he finished speaking with Miner, Deputy Angelo returned to his car and proceeded to the address he found for Appellant. The deputy recalled Appellant was not very cooperative and appeared to be intoxicated. He added Appellant's answers to his questions did not make sense. When Deputy Angelo asked Appellant what happened, Appellant responded he did not know what the deputy was talking about. Appellant showed Deputy Angelo two dogs, which Appellant indicated belonged to him.

{¶7} The body camera video of Deputy Angelo's interaction with Appellant was played for the jury. The video depicts Deputy Angelo and Appellant approaching a brown pit bull. The dog is laying down and does not get up as they approach.

{¶8} Deputy Angelo testified the dog moved away from Appellant when Appellant reached for the animal. Deputy Angelo noted, when the dog stood up and walked, it appeared to have a slight limb. Appellant did not have licenses for the two dogs on the property. The Humane Society subsequently removed the animals.

{¶9} Virginia Miner later testified she was at her parents' home at 2510 34th Street, NE, in Canton, Ohio, on August 28, 2019, and spoke with police. When asked if she told police Appellant punched his dog, Miner replied, "Um, well that's what I was told.

So, yes I did."  Tr. at 82. Asked a second time, Miner stated, "I agreed with my nephew, yes." Id.

{¶10}  The state's examination of Miner continued as follows:


Q. I'm sorry.  Did you tell the police that [Appellant] punched his dog?

A. U-umm. Well I said yes, and –

Q. Yes.

A. Yes.

Q. You told the police that?

A. Yes.

Q. When asked whether someone was punching a dog you told the police, "Yes."

A. Yes, 'cuz that's what –

Q. When asked –

A. -- I was told.

Q. -- if some --, -- that someone punching their dog was [Appellant] you said, "Yes."

A. Repeat that again.

Q. When asked whether that someone punching their dog was [Appellant], you said, "Yes."

* * *

A. Yes, I did say that.

* * *

Q. Did you tell the police that [Appellant] tried to hurt his dog by punching it?

A. Well I wasn't there at the time.

* * *

A. I didn't witness it.  That's what my nephew said when I got there.

Q. Did you tell the police that [Appellant] tried to hurt his dog by punching it?

 A. Umm, I don't recall.  I mean – but I did say yes to him hitting the dog, because that's what I was told when I got there. So I didn't really witness it with my eyes, 'cuz he was gone when I got there.

{¶11}  Tr. at 83-84.

{¶12}  Miner agreed she would remember what happened on August 28th better on August 28th than on October 22nd.   On cross-examination, Miner stated she did not see Appellant mistreat his dog because she was not at the residence at the time of the incident.  She explained the statement she gave the officer was based upon what her nephew had told her.

{¶13}  Following Miner's testimony, the state rested its case.  Appellant made an oral Crim. R. 29 motion for acquittal, which the trial court denied.  Appellant did not call any witnesses on his behalf.  The parties gave their closing arguments.  After jury instructions and deliberations, the jury found Appellant guilty of prohibitions concerning companion animals.  The trial court sentenced Appellant to a term of 90 days in the Stark

County Jail, but suspended all but 60 days on the condition of Appellant's good behavior for two years. Appellant was given credit for one day served.

**{¶14}** It is from this conviction and sentence Appellant appeals, raising the following assignments of error:

I. THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S CRIMINAL RULE 29 MOTION FOR ACQUITTAL BECAUSE THE STATE FAILED TO PRODUCE SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST THE APPELLANT FOR THE OFFENSE OF PROHIBITIONS CONCERNING COMPANION ANIMALS IN VIOLATION OF R.C. 959.131(B).

II. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST THE APPELLANT FOR THE OFFENSE OF PROHIBITIONS CONCERNING COMPANION ANIMALS IN VIOLATION OF R.C. 959.131(B).

III. THE APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, AND MUST BE REVERSED.

IV. THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS UNDER THE 6TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION.

IV

{¶15} For ease of discussion, we shall address Appellant's assignments of error out of order. In his fourth assignment of error, Appellant raises a claim of ineffective assistance of counsel.

{¶16} Our standard of review for ineffective assistance claims is set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Ohio adopted this standard in the case of *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; i.e., whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his or her essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. *Id.*

{¶17} Trial counsel is entitled to a strong presumption all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675, 693 N.E.2d 267 (1998). In addition, the United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley* at 143, 538 N.E.2d 373, *quoting Strickland* at 697, 104 S.Ct. 2052. Even debatable trial tactics and strategies do not

constitute ineffective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980).

{¶18} Appellant submits trial counsel was ineffective for failing to raise a continuing objection to, or separately objecting to the introduction of, the video footage from Deputy Angelo's body camera of the deputy's interaction with Virginia Miner.[1] Appellant maintains trial counsel was also ineffective for failing to request the trial court give the same limiting instruction it gave after Appellant's hearsay objection to Deputy Angelo's earlier trial testimony of his initial conversation with Virginia Miner, be included in the final charge to the jury.

{¶19} During his testimony, Deputy Angelo stated he was dispatched to 2510 34th Street N.E., on August 28, 2019, in response to a report a male was punching a dog. When he arrived, the deputy made contact with Virginia Miner and a boy. Deputy Angelo's examination proceeded as follows:

Q. And did you ask Miss Miner any questions?

A. I did. I asked her, um, I stated, "We got called in reference to a male punching a dog," and she said, "Yeah, it was [Appellant]."

Q. And did she identify who [Appellant] was?

A. Um, she was able to give me his name, his first and last name, and his approximate age.

Q. And did she advise you what their relationship was?

A. I believe she said they were cousins.

---

[1] The video was played to the jury prior to Virginia Miner's trial testimony.

\* \* \*

> Q.    Did you ask her any other questions?
>
> A. Yeah, I asked her, um, basically what happened and she said [Appellant] was over and he just started punching his dog and that she told him before not to do that but –

**{¶20}** Tr. at 64.

**{¶21}** Counsel for Appellant objected to the statements made by Virginia Miner to Deputy Angelo as being hearsay. Although the trial court overruled the objection, it gave the jury a limiting instruction, advising Deputy Angelo's testimony was permissible "as to why he continued with his investigation . . . I'm going to limit it to that, and the before, that's out." Tr. at 65.

**{¶22}** The state's examination of Deputy Angelo continued. The state asked the trial court for permission to play the body camera footage of the deputy's interaction with Virginia Miner. The trial court asked counsel for Appellant, "You okay with that?" to which counsel replied, "Yes, Your Honor." Tr. at 67. Thereafter, the video footage was played for the jury.

**{¶23}** We have reviewed the video and find the following occurred: Deputy Angelo exits his vehicle and walks down a driveway. Miner and a boy can be seen in the background. As Deputy Angelo approaches, he states, "We got a call that there was possibly someone punching a dog in your yard?" Miner immediately replies, "Yeah. He's not here right now." The conversation continues with the deputy questioning, "Was he punching it?" Miner answers, "Yeah." Deputy Angelo inquires, "Who is he?" to which

Miner responds, "Aaron Miner." The deputy asks, "Was he hurting the dog?" Miner responds, "Yes, he was," adding "And we just told him too. We said someone is going to end up calling the law on you for doing that. And he said he didn't care."

**{¶24}** Counsel for Appellant failed to object at any point during the playing of the body camera video. We recognize tactical decisions, such as whether and when to object, ordinarily do not give rise to a claim for ineffective assistance. *State v. Johnson,* 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 139–140. Thus, "[t]he failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel." *State v. Holloway,* 38 Ohio St.3d 239, 244, 527 N.E.2d 831 (1988). However, we find the record strongly suggests if an objection had been raised, the trial court would have likely overruled the objection, but given a limiting instruction similar to its prior limiting instruction during Deputy Angelo's testimony.

**{¶25}** We find counsel's failure to object "fell below an objective standard of reasonable representation and was violative of any of her essential duties to Appellant." Having failed to object to Virginia Miner's statement to Deputy Angelo Appellant punched his dog, the statement came in as substantive evidence of the crime. The jury could have used Miner's unchallenged statements as depicted on the video as direct evidence Appellant punched his dog rather than her subsequent testimony at trial she was merely repeating what her nephew had told her when she responded to Deputy Angelo. Without Miner's video statement as substantive evidence, we find a reasonable probability the outcome of the trial would have been different. We find the additional evidence the state relies upon -- the fact the dog did not get up when approached and backed away from Appellant and the fact the dog exhibited a slight limp -- when considered in light of Virginia

Miner's qualification/recantation of these statements during her trial testimony, is less than overwhelming so as to overcome the effect of his counsel's ineffectiveness in not objecting to the video statements of Virginia Miner.

{¶26} Based upon the foregoing, we sustain Appellant's fourth assignment of error, reverse his conviction, and remand this matter to the trial court for a new trial.

I, II

{¶27} We elect to address Appellant's first and second assignments of error together. In his first assignment of error, Appellant contends the trial court erred in overruling his Crim. R. 29 motion for acquittal as the state failed to present sufficient evidence to sustain a conviction for the offense of prohibitions concerning companion animals. In his second assignment of error, Appellant asserts his conviction was based upon insufficient evidence.

{¶28} Crim. R. 29(A) provides: "The court on motion of a defendant * * *after the evidence on either side is closed shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." However, "a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), syllabus. Thus, a motion for acquittal tests the sufficiency of the evidence. *State v. Tatum*, 3d Dist. Seneca No. 13-10-18, 2011-Ohio-3005, 2011 WL 2448972, ¶ 43, citing *State v. Miley*, 114 Ohio App.3d 738, 742, 684 N.E.2d 102 (4th Dist. 1996).

**{¶29}** When an appellate court reviews a record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, 827 N.E.2d 285, ¶ 47. Sufficiency is a test of adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Accordingly, the question of whether the offered evidence is sufficient to sustain a verdict is a question of law. *State v. Perkins*, 3d Dist. Hancock No. 5-13-01, 2014-Ohio-752, 2014 WL 855870, ¶ 30, citing *Thompkins* at 386, 678 N.E.2d 541.

**{¶30}** Appellant was convicted of R.C. 959.131(B), which states:

(B) No person shall knowingly torture, torment, needlessly mutilate or maim, cruelly beat, poison, needlessly kill, or commit an act of cruelty against a companion animal.

**{¶31}** Viewing the evidence in a light most favorable to the state, we find the jury could have found the essential elements of prohibitions concerning companion animals proven beyond a reasonable doubt. Because Virginia Miner's statement to Deputy Angelo Appellant punched the dog came into evidence without objection or a limiting instruction, that evidence was available for the jury to consider. This evidence is sufficient to support a finding Appellant knowingly committed an act of cruelty against a companion animal. Although Miner later testified at trial she was only repeating what her nephew told her when she informed Deputy Angelo Appellant punched his dog, the jury could have

disbelieved this testimony and relied upon the statements she made on August 28, 2019, as recorded on the deputy's body camera.

{¶32}  Based upon the foregoing, we find there was sufficient evidence to sustain Appellant's conviction and the trial court did not err in denying his Crim. R. 29 motion for acquittal.

{¶33}  Appellant's first and second assignments of error are overruled.

III

{¶34}  In his third assignment of error, Appellant challenges his conviction as being against the manifest weight of the evidence.

{¶35}  Based upon our disposition of Appellant's fourth assignment of error, we find Appellant's third assignment of error to be moot.

{¶36}  The judgment of the Canton Municipal Court is reversed and the matter remanded to the trial court for a new trial.

By: Hoffman, P.J.
Delaney, J.  and
Baldwin, J. concur